# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **L.D.**

**No. 18-1064** (Hampshire County 17-JA-56)

and

*In re* **J.D.**

**No. 19-0070** (Hampshire County 18-JA-50)

**FILED**

**June 12, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother C.P., by counsel Jeremy B. Cooper, appeals the Circuit Court of Hampshire County's October 4, 2018, order terminating her parental rights to L.D. and January 3, 2019, order terminating her parental rights to J.D.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda filed a response in support of the circuit court's orders. The guardian ad litem, Joyce E. Stewart, filed a response on behalf of the children in support of the circuit court's orders. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without making a finding as to whether she was provided necessary services under the Americans with Disabilities Act ("ADA") when the DHHR openly refused to provide services intended to attain reunification, and basing termination on factual findings that did not comport with the record. Finally, petitioner alleges that she was deprived of effective assistance of counsel during the proceedings below.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

On August 23, 2017, the DHHR filed an abuse and neglect petition concerning L.D. alleging that petitioner's mental health issues prevented her from being able to adequately care for the child. The DHHR alleged that petitioner had schizoaffective disorder and post-traumatic stress disorder and that the Child Protective Services ("CPS") worker suspected that she was not taking her medication. Additionally, the DHHR alleged that, on one occasion, while petitioner and the father smoked marijuana together, petitioner abruptly cut her own wrist and stabbed the father, cutting his hand in four places. When police and emergency medical service personnel arrived, petitioner assaulted them as well. She was subsequently hospitalized due to her psychiatric issues. Petitioner later explained that she did not remember much of the incident with the father and admitted that her "meds were off." Upon filing the instant petition, the DHHR requested only legal custody of the child, with L.D. continuing in the care of her father. The DHHR requested that petitioner have no visitation with the child pending further order of the circuit court. On August 29, 2017, the circuit court held a status hearing which petitioner did not attend due to her hospitalization, but she was represented by counsel. The circuit court ordered that L.D. remain in the legal custody of the DHHR and the physical custody of her father.

Petitioner appeared for a hearing on September 19, 2017, and moved for visitation with L.D., which the circuit court granted so long as the visits were supervised by the father. The adjudicatory hearing was continued. However, prior to the next adjudicatory hearing, the DHHR filed an amended petition alleging that the father repeatedly left the child in the unsupervised care of petitioner in violation of the circuit court's previous order. The circuit court held a final adjudicatory hearing on November 2, 2017, during which petitioner stipulated that her mental health issues led her to neglect L.D., that she attempted to cut the father, and that she drank dish liquid while L.D. was in her care. Petitioner moved for a post-adjudicatory improvement period and the circuit court ordered the multidisciplinary team ("MDT") to meet and create a case plan.

In December of 2017, the circuit court held a review hearing to approve the family case plan. The DHHR advised the circuit court that it was in agreement with the MDT to grant petitioner an improvement period for the purpose of determining whether visitation would be appropriate. Petitioner expressed her wishes to be reunited with the child; however, the DHHR opposed reunification. Counsel for petitioner explained to her that the disposition of the matter was ultimately up to the circuit court to decide. Thereafter, under oath, petitioner agreed to the terms of the case plan as presented. She was granted a post-adjudicatory improvement period. On March 12, 2018, the circuit court held a review hearing in regard to petitioner's post-adjudicatory improvement period. The DHHR reported that petitioner failed to attend her psychological evaluation at Eastern Psychological Associates, but that she subsequently secured her own evaluator and completed a psychological evaluation with that provider. However, the MDT had not yet met to discuss the recommendations of that evaluation. Petitioner advised the circuit court that she was working full time, had a driver's license and a vehicle, and that she wanted to prove to the circuit court that she was stable and could raise the child. She also explained that she tried to obtain social security disability benefits due to her mental health issues and sciatica, but was denied. At the conclusion of the hearing, the circuit court ordered that petitioner's post-adjudicatory improvement period continue. The circuit court held a review hearing on April 9, 2018, during which the MDT recommended that petitioner's improvement period continue. The circuit court found that the DHHR was "making reasonable efforts to achieve permanent placement

2

for L.D., by providing services to [petitioner] for reunification of the child with a biological parent."

On May 7, 2018, the circuit court held a dispositional hearing regarding the father and ultimately terminated his parental rights to L.D. Petitioner did not appear for this hearing and it was reported that her whereabouts were unknown at that time. In June of 2018, petitioner wrote a letter to the circuit court explaining that she had obtained employment and "maintained compliance with drug court as well as counseling services during this time." She further alleged that she did not "feel that either the DHHR or [her] lawyer have made 'diligent efforts' to encourage and strengthen the parental bond" due to the DHHR stating that it was their goal to terminate petitioner's parental rights "in direct conflict with higher case law." Lastly, petitioner alleged that the DHHR ignored her requests to install a safety monitor in her home, a reasonable means of accommodation of her disability. On June 13, 2018, the DHHR filed a revised case plan requesting the termination of petitioner's parental rights due to her failure to safely manage her mental health issues. The case plan also noted that the services recommended by petitioner's updated psychological evaluation were implemented, but that petitioner failed to fully comply with those services as well as the other terms and conditions of her improvement period, including drug screens, parenting and adult life skills training, and participation in visitation with L.D.

In July of 2018, petitioner gave birth to J.D. in a Maryland hospital. Petitioner failed to inform the DHHR that she was pregnant and she placed the child in the care of her parents once released from the hospital. After the DHHR became aware of the birth of J.D., a second amended petition was filed and the child was placed in the legal and physical custody of the DHHR. On August 20, 2018, the circuit court held an adjudicatory hearing regarding J.D. and a dispositional hearing regarding petitioner's parental rights to L.D. In its October 4, 2018, order, the circuit court found that petitioner neglected J.D. by attempting to hide her pregnancy and the birth of the child, by failing to have proper prenatal care during the pregnancy, and by failing to take proper steps to secure a medical card so that the child could receive treatment for his double cleft palate. The circuit court noted that petitioner previously disclosed a history of abuse and neglect in her parents' home and inappropriately placed the child with her parents. The circuit court found that petitioner, "by her own actions . . . demonstrated that she did not feel she was capable of caring for her son." The circuit court also found that petitioner demonstrated an inadequate capacity to solve the problems of abuse and/or neglect on her own or with help and that petitioner failed to respond or follow through with the terms of a reasonable family case plan and rehabilitative efforts to address her mental health issues and deficiencies. Specifically, petitioner "failed to consistently participate in and avail herself of the following services, which were offered to her in an effort to remedy the [circuit c]ourt's findings of abuse and/or neglect: Adult Life Skills, Individualized Parenting Classes, and services offered through South Branch Valley Day Report Center." The circuit court further found that petitioner failed to manage her mental health issues, which threatened the safety, health, and welfare of the children. The circuit court specifically noted that "while [petitioner] has participated in counseling services for an extended period of time, she is unable to successfully manage her mental health needs and maintain emotional and mental stability on a long-term basis." In sum, the circuit court found no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that the termination of her parental rights to L.D. was necessary for the child's welfare. Petitioner's parental rights to L.D. were terminated in the circuit court's October 4, 2018, dispositional order.

On November 13, 2018, the circuit court held a dispositional hearing regarding petitioner's parental rights to J.D. and addressed placement for the children. The circuit court entered a dispositional order on January 3, 2019, and reiterated the findings in the previous dispositional order. Additionally, the circuit court found that there was no substantial improvement in petitioner's circumstances since the termination of her parental rights to L.D. In fact, her circumstances worsened since the prior dispositional hearing, as she had been terminated from Home Base services due to her noncompliance with service providers and failure to attend multiple visits with the child. In regard to the visits she did attend, the circuit court noted that the visits were "replete with instances of noncompliance and lack of progress in implementing parenting skills training provided" in two prior CPS cases. Additionally, petitioner "failed to bring necessary items such as food and diapers; and, she has demonstrated an inability to handle the behaviors" of the child. The circuit court found that petitioner "requires ongoing psychiatric treatment with medications and therapy support to maintain her emotional stability, improve her self-esteem, address anger management, and, in order to develop problem resolution skills." Further, the circuit court noted that petitioner was "inconsistent with following through with and availing herself of treatment and services, to include services which were left in place to assist" her even after her parental rights to L.D. were terminated and while the case remained open to address her parental rights to the minor child, J.D. The circuit court found no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that J.D.'s welfare necessitated the termination of her parental rights, especially in light of his tender age and his "paramount need of safety, stability, continuity, and permanency." The circuit court terminated petitioner's parental rights to J.D. in its January 3, 2019, dispositional order.[2] Petitioner appeals the October 4, 2018, and January 3, 2019, dispositional orders terminating her parental rights to the children.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

---

[2]The children's father's parental rights were terminated below. According to respondents, the permanency plan for the children is adoption in their current placement.

4

First, petitioner argues that the circuit court erroneously terminated her parental rights without making a finding as to whether she was provided necessary services under the ADA.[3] Petitioner asserts that no findings regarding ADA compliance were made following the preliminary hearing pursuant to West Virginia Code § 49-4-602(b). Yet, petitioner failed to raise any objection to, or otherwise challenge, the circuit court's alleged lack of findings during the proceedings. In fact, she did not raise any ADA issues until she wrote a letter to the circuit court in June of 2018, nearly a year into the proceedings, and still made no mention of the circuit court's failure to make certain findings. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). Therefore, we decline to address this argument on appeal.

Next, in support of her argument that the circuit court erroneously terminated her parental rights, petitioner asserts that the DHHR "openly refused to provide services intended to attain reunification." In support, petitioner contends that the DHHR "never intended to reunify the family, and the [c]ircuit [c]ourt was openly aware of that fact." She also argues that there were no aggravated circumstances present that would relieve the DHHR of its requirement to make reasonable efforts to preserve the family. *See* W. Va. Code 49-4-604(b)(7). Petitioner's argument lacks factual basis in the record.

The record shows that during the December 14, 2018, hearing, the DHHR informed the circuit court that it was in agreement with the MDT to recommend that petitioner participate in a post-adjudicatory improvement period to determine what level of contact she should have with the child, if any. Petitioner expressed her desire for reunification with L.D. and her attorney explained to her that it was ultimately up to the circuit court to determine the outcome of the case depending on her level of compliance and ability to improve the conditions of abuse and neglect. Petitioner agreed to the terms of the family case plan as it was presented. The record shows that petitioner was afforded services such as drug screens, parenting and adult life skills training, and visitation with the child. During a review hearing in April of 2018, the MDT recommended that petitioner's improvement period continue. Also during this hearing, the circuit court found that the DHHR was "making reasonable efforts to achieve permanent placement for [L.]D., by providing services to [petitioner] *for reunification of the child with a biological parent*." (Emphasis added). However, in June of 2018, the DHHR moved for the termination of petitioner's parental rights due to her noncompliance with services. The DHHR alleged that petitioner failed to fully participate in the services recommended by her psychological evaluation, as well as other terms and conditions of her post-adjudicatory improvement period. Later, following the dispositional hearings, the circuit court found that petitioner was unable to manage her mental health issues and failed to avail herself to services during her post-adjudicatory improvement period. This evidence clearly demonstrates

---

[3]In support of this argument, petitioner alleges that the circuit court did not hold a preliminary hearing. However, petitioner does not raise a specific assignment of error regarding this allegation, nor did she object to the circuit court proceeding to adjudication after she was served with the petition. Therefore, we will not address this argument on appeal. *See Noble*, 223 W. Va. at 821, 679 S.E.2d at 653.

that the DHHR provided services aimed at reunification and petitioner failed to consistently participate in those services. Therefore, we find petitioner is entitled to no relief.

Petitioner next argues that the circuit court erred in terminating her parental rights "based on factual findings that did not comport with the record." Specifically, petitioner alleges that the circuit court erroneously found that she hid her pregnancy with J.D. from the DHHR because a DHHR worker testified that she knew of petitioner's pregnancy about six or seven months into the pregnancy. Petitioner also argues that the circuit court erroneously found that she placed J.D. in danger by leaving him with her parents based upon prior disclosures of domestic violence in her parents' home. Petitioner misstates the circuit court's findings. First, the circuit court found that petitioner "*attempted* to hide her pregnancy and the circumstances of the birth of the minor child, J.D." from the DHHR. (Emphasis added). This finding was supported by petitioner's own testimony that she failed to disclose her pregnancy to the DHHR and the MDT, that she went to Maryland to deliver the child, and that she planned to "sign custody over" to her parents so that the DHHR would not take the child. In regard to petitioner leaving J.D. with her parents, the circuit court found that petitioner previously made disclosures regarding her parents, including a history of domestic violence. Based upon those disclosures, the circuit court found that petitioner "inappropriately placed the minor child, J.D., with her parents." Based upon the evidence presented, we find no error in these findings. Further, the circuit court relied on additional, substantial evidence to find that petitioner failed to correct the issues of abuse and neglect.

West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

As discussed above, the record shows that petitioner failed to consistently participate in services. Although she participated in counseling, the circuit court found that she was unable to "manage her mental health needs and maintain emotional and mental stability on a long-term basis." Despite continued services after her parental rights to L.D. were terminated in October of 2018, petitioner's circumstances only worsened and she was terminated from Home Base services due to her noncompliance with service providers and failure to attend multiple visits with the children. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citing *Tiffany Marie S.*, 196 W. Va. at 228 and 237, 470 S.E.2d at 182 and 191; *State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 259, 470 S.E.2d 205, 213 (1996)). The visits that she did attend were problematic as the record shows that petitioner was unable to demonstrate proper parenting skills

6

or properly handle the children's behaviors. She also failed to bring necessary items to visits such as food and diapers.

Petitioner also asserts that the circuit court ignored the recommendations of her most recent psychological evaluation, which suggested reunification with additional support to assist her in controlling her mental illness. However, the recommendation also stated that petitioner would benefit from parenting training, psychiatric treatment, medication, and therapy, all of which were provided to petitioner during her post-adjudicatory improvement period. As discussed, petitioner did not consistently participate in those services. Additionally, the evaluation provided that petitioner "may at some point" be able to demonstrate emotional stability. However, this prognosis clarifies that petitioner was unlikely to remedy the conditions of abuse and neglect in the near future. Based on this evidence, it is clear that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that the termination of her parental rights was in the children's best interests. The circuit court specifically noted that the children's welfare necessitated the termination of petitioner's parental rights, especially in light of J.D.'s young age and his "paramount need of safety, stability, continuity, and permanency." As such, we find no error in the circuit court's termination of petitioner's parental rights.

Lastly, petitioner argues that she was deprived of effective assistance of counsel during the proceedings below. It is important to note that this Court has never recognized a claim of ineffective assistance of counsel in an abuse and neglect proceeding and we decline to do so here.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 4, 2018, and January 3, 2019, dispositional orders are hereby affirmed.

Affirmed.

**ISSUED**: June 12, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

7